1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

10

11

| | |
|---|---|
| DORRENDA THOMAS, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act, | CASE NO. 1:10-cv-01906-AWI-SKO |

12

**Plaintiff,**

13

v.

14

AETNA HEALTH OF CALIFORNIA,
INC., et al.,

15

16

**Defendants.**

17

_____/

**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR REMAND**

(Docket No. 17)

18

## I.   INTRODUCTION

19

Before the Court is Plaintiff Dorrenda Thomas' motion for remand in *Thomas v. Aetna Health*

20

*of California, et al.* (*"Thomas"*)*,* No. 1:10-cv-01906-AWI-SKO.  Plaintiff seeks an award of civil

21

penalties under the California Private Attorneys General Act of 2004 ("PAGA"), codified at Cal.

22

Lab. Code § 2699 (2010), against Defendants Aetna Health of California ("AHC"), Aetna Life

23

Insurance Company ("ALIC"), and Aetna, Inc. ("Aetna") for various Labor Code violations.

24

The *Thomas* action is related to *Gong-Chun v. Aetna Life Insurance Co., et al.* (*"Gong-*

25

*Chun"*), 1:09-cv–01995-AWI-SKO, an earlier filed wage and hour class action brought on behalf

26

of non-exempt current and former employees of ALIC.  (*See Thomas*, No. 1:10-cv-01906-AWI-

27

SKO, Doc. 27.)  As Aetna and ALIC were both named as defendants in the *Gong-Chun* and *Thomas*

28

actions and both cases involved the same or similar groups of plaintiffs, the two matters were related

by order of the Court.

For the reasons set forth below, the Court recommends that Plaintiff's claim for PAGA penalties asserted against AHC be DISMISSED and Plaintiff's motion for remand be DENIED.

## II.   BACKGROUND

In light of the relationship between *Gong-Chun* and *Thomas*, the procedural background of each case is summarized below.

### A.   *Gong-Chun v. Aetna Life Insurance Co., et al.*, 1:09-cv–01995-AWI-SKO

On September 17, 2009, Plaintiff Michael Gong-Chun filed a class action complaint against ALIC and Aetna claiming substantive Labor Code violations for (1) unpaid meal breaks under Labor Code sections 226.7 and 512(a); (2) wages not paid upon termination under Labor Code sections 201 and 202; (3) wages not timely paid during employment under Labor Code section 204; and (4) violation of the California Business & Professions Code § 17200.  ALIC and Aetna removed *Gong Chun* to this Court on November 12, 2009.  The *Gong Chun* class action does not state a claim for PAGA civil penalties.  While Plaintiff Dorenda Thomas is not the class representative in the *Gong Chun* action, she is a putative class member.

On April 2, 2010, ALIC filed a motion to stay all further proceedings pending the outcome of the California Supreme Court's review of *Brinker Restaurant Corp. v Superior Court*, 80 Cal. Rptr. 3d 781 (2008), *petition for review granted,* 85 Cal. Rptr. 3d 688.  ALIC's motion was granted on May 17, 2010.  (*See* 1:09-cv-01995-AWI-SKO, Doc. 23.)  Although *Brinker Rest. Corp. v. Sup. Ct.* was fully briefed as of May 17, 2010, several other meal break cases have been granted review by the California Supreme Court, including *Brinkley v. Pub. Storage*, 167 Cal. App. 4th 1278, *review granted on January 14, 2009; Bradley v. Networkers Int'l LLC,* No. D052365, 2009 WL 265531 (Cal. Ct. App.  Feb. 5, 2009)*, review granted on May 13, 2009*;  *Faulkinbury v. Boyd & Assocs. Inc.*, 185 Cal. App. 4th 1363 (2010), *review granted on October 13, 2010*; *Brooker v. Radioshack Corp.*, No. B212893, 2010 WL 3341816 (Cal. Ct. App. Aug. 26, 2010), *review granted on November 17, 2010;* and *Hernandez v. Chipotle Mexican Grill Inc.*, 189 Cal. App. 4th 751 (2010), *review granted on January 26, 2011.*   The Supreme Court has ordered that the briefing in these cases be held pending *Brinker*; however, oral argument in *Brinker* has not yet been scheduled.

**B.**   ***Thomas v. Aetna Health of California, et al.,*** No. 1:10-cv-01906-AWI-SKO

On September 2, 2010, Plaintiff Dorrenda Thomas filed a complaint for violation of Labor Code §§ 2698 *et seq.* pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA") in Fresno County Superior Court against Defendants AHC, Aetna, and ALIC.  The action was filed by Plaintiff individually and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the PAGA.[1]

According to the complaint, Defendants employed Plaintiff as a "Small Group Sales Support Broker Liaison/Renewal Consultant," a non-exempt (hourly) paid position at Defendants' Fresno County business location.  (Doc. 1-1 (Complaint), ¶ 19.)  Plaintiff contends that Defendants violated various California Labor Code provisions by failing to (1) pay overtime wages, (2) provide meal periods, (3) provide rest periods, (4) pay minimum wage, (5) timely pay wages upon termination, (6) timely pay wages during employment, and (6) provide complete and accurate wage statements. (Doc. 1-1, ¶¶ 41-47.) [2]

On October 12, 2010, Defendants filed a notice of removal, claiming diversity of citizenship pursuant to 28 U.S.C. § 1332(a) as the jurisdictional predicate.  Defendants ALIC and Aetna are citizens of the state of Connecticut while AHC is a citizen of California.[3]  Plaintiff is also a citizen of California.  Defendants argue, however, that AHC never employed Plaintiff, is a sham/fraudulent

---

[1] *See* Doc. 32 (Plaintiff's brief in opposition to Defendants' Motion to Consolidate), 8:8-10 ("The Complaint was pleaded solely as a representative action to recover civil penalties pursuant to [PAGA,] codified at California Labor Code section 2698, *et seq.*").)  The complaint contains some ambiguities in that it seeks damages and restitution, which are not awardable pursuant to PAGA.

[2] Plaintiff maintains that this is a *non-class* representative action seeking only civil penalties under PAGA, but the complaint is somewhat inconsistent with Plaintiff's position.  For example, the complaint contains the following allegation: "Plaintiff alleges, on information and belief, that the aggregate amount in controversy for the *proposed class action*, including monetary damages, restitution[,] and attorneys['] fees requested by Plaintiff, is less than five million dollars ($5,000,000), exclusive of interest and costs."  (Doc. 1-1, ¶ 2) (emphasis added).  The caption of the complaint states that Dorrenda Thomas brings her suit individually, "*and on behalf of other members of the general public similarly situated*, and as an aggrieved employee pursuant to [PAGA]."  However, the text of the complaint states that it is brought by Plaintiff "individually, and on behalf of all aggrieved employees . . . ."  (Doc. 1-1, 1:1) (emphasis added).

[3] The complaint caption identifies AHC as a Connecticut corporation, but at the April 27, 2011, hearing Plaintiff's counsel explained this is a typographical error.  The substantive allegations of the complaint identify AHC as a California corporation, and Defendants Aetna and ALIC acknowledge that AHC is a California corporation.  (*See* Doc. 1-1, ¶ 8 (Defendant [AHC] was and is, upon information and belief, a California corporation doing business in California . . . .").)

3

1  defendant, and AHC's citizenship must be disregarded for purposes of diversity and jurisdiction.

2  Defendants also assert that more than $75,000 is placed into controversy by virtue of Plaintiff's

3  complaint for PAGA penalties, and thus removal jurisdiction is properly asserted.

4       On November 10, 2010, Plaintiff filed a motion for remand asserting that AHC is not a

5  fraudulent/sham defendant, and AHC's presence in the litigation destroys diversity. Plaintiff also

6  asserts that her individual stake in the PAGA penalties is not more than $75,000, which she

7  specifically pled in her complaint, and Defendants have not proven to a legal certainty that her

8  portion of the PAGA penalties exceeds the jurisdictional threshold.

9       The motion for remand was initially scheduled for hearing before District Judge Wanger on

10 January 31, 2011. Judge Wanger determined that reassignment to Chief District Judge Ishii and

11 Magistrate Judge Oberto was appropriate because of the similarity of the instant action with the

12 *Gong-Chun* class action currently assigned to Chief Judge Ishii. (Doc. 27.) On February 7, 2011,

13 the motion to remand was referred to Magistrate Judge Oberto. On February 16, 2011, Defendants

14 filed a motion to consolidate this matter with the *Gong-Chun* action, asserting the following:

15       After the *Gong-Chun* wage and hour class action was stayed by this Court on May
         15, 2010, the *Gong-Chun* lawyers ([Initiative Legal Group]) filed the *Thomas* PAGA
16       penalties action in state court on September 2, 2010. Aetna thereafter removed
         *Thomas* (and notified the court of the related nature of the actions). Both plaintiffs
17       purported to represent Aetna non-exempt employees in California who allegedly
         were denied meal periods and other timely wages. The *Gong-Chun* complaint seeks
18       alleged unpaid wages, interest, related penalties, attorneys' fees and costs. *See* Prayer
         for Relief. The *Thomas* complaint seeks PAGA penalties based on alleged unpaid
19       wages, attorneys' fees and costs. *See* Prayer for Relief. Plaintiff Thomas is a putative
         class member in *Gong-Chun.*

20
         Although counsel never objected to Aetna's removal of the *Gong-Chun* action
21       to this Court, a motion to remand the related *Thomas* action was filed on November
         10, 2010 and is scheduled for hearing concurrently with this consolidation motion on
22       March 16, 2011. This is simply counsel's attempt to circumvent the *Gong-Chun* stay.

23 (Doc. 30, 2:14-3:2.)

24       The Court determined that the motion to consolidate could be potentially rendered moot by

25 the Court's decision regarding the motion for remand. Therefore, the Court vacated the March 16,

26 2011, hearing date with regard to Defendants' motion to consolidate and currently holds it in

27 abeyance until a final decision is issued with regard to Plaintiff's motion for remand. (Doc. 34.) On

28 April 27, 2011, a hearing was held with regard to Plaintiff's motion for remand. (Doc. 36.) Leslie

1  Abbott, Esq. and Philippe Lebel, Esq. appeared on behalf of Defendants.  Netta Roshanian, Esq.

2  appeared on behalf of Plaintiff.[4]

3  **C.   Representation of Plaintiffs in *Gong-Chun* and *Thomas***

4      Plaintiff Michael Gong-Chun is represented by Miriam Schimmel, Payan Shahian, Sang J.

5  Park, and Orlando J. Arellano, of Initiative Legal Group, LLP ("ILG").   ILG also represented

6  Plaintiff Dorrenda Thomas at the time her complaint was filed in Fresno County Superior Court.

7  Thomas is now represented by the Law Offices of Mark Yablonovich.  Mr. Yablonovich was once

8  employed by ILG, but he has since started his own practice, and his firm now represents Ms.

9  Thomas.  (*See* Doc. 16; Doc. 32-1, ¶ 9.)

10                          **III.   DISCUSSION**

11  **A.   Legal Standard**

12      "A defendant may remove an action to federal court based on federal question jurisdiction

13  or diversity jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing

14  28 U.S.C. § 1441).  It is presumed, however, "that a cause lies outside [the] limited jurisdiction [of

15  the federal courts] and the burden of establishing the contrary rests upon the party asserting

16  jurisdiction." *Id.* (internal quotation marks omitted).

17      "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the

18  first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam).  The removing

19  party always bears the burden of establishing that removal is proper, and the court "resolves all

20  ambiguity in favor of remand." *Hunter*, 582 F.3d at 1042.

21      The propriety of removal requires the consideration of whether the district court has original

22  jurisdiction of the action,  i.e., whether the case could have originally been filed in federal court

23  based on a federal question, diversity of citizenship, or another statutory grant of jurisdiction.  *See*

24  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  If the case is within the original jurisdiction

25

26          [4] Plaintiff's counsel is reminded that the Local Rules of this Court provide that "[e]xcept as otherwise provided
    herein, only members of the Bar of this Court shall practice in this Court."  Local Rule 180(b).  Ms. Roshanian is
27  admitted to practice in California, but she is not admitted to practice in this district.  Thus, her appearance at the hearing
    did not comply with the Local Rules.  Any further appearances on behalf of Plaintiff must be made by an attorney
28  admitted to practice before this Court.

of the district court, removal is proper so long as the defendant complied with the procedural requirements set forth in 28 U.S.C. § 1446.  If the case is not within the original jurisdiction of the district court, removal is improper.  The absence of subject matter jurisdiction is not waivable by the parties.  *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951).

Federal district courts have original jurisdiction over cases where there is complete diversity of citizenship, i.e., between citizens of different states.  *See* 28 U.S.C. § 1332(a).  Further, a defendant may remove an action to federal court under Section 1332 provided no defendant is a citizen of the same state in which the action was brought. *See id.* § 1441(a), (b).  An exception to the requirement for complete diversity exists, however, when a non-diverse defendant has been fraudulently joined for the purpose of defeating diversity jurisdiction. *McCabe v. Gen. Foods Corp*., 811 F.2d 1336, 1339 (9th Cir. 1987).  In that case, the district court may disregard a non-diverse party named in the state court complaint and retain jurisdiction if joinder of the non-diverse party is a sham or fraudulent.

**B.    Contentions of the Parties**

Plaintiff contends that the Court lacks subject matter jurisdiction over this action.  Plaintiff asserts that she is seeking relief for one cause of action only: civil penalties pursuant to PAGA.  She contends that her complaint clearly and specifically pleads that monetary civil penalties under PAGA *attributable to her* are less than $75,000.  For purposes of the amount in controversy, Plaintiff argues that only the potential civil penalties based on Labor Code violations she personally suffered may be calculated to reach the jurisdictional threshold.  Moreover, because she has specifically alleged that the amount of penalties attributable to her individually is less than $75,000, Defendants may only invoke the Court's subject matter jurisdiction if they can prove to a legal certainty that the amount of potential civil penalties *attributable to Plaintiff individually* equals more than $75,000.  Plaintiff also contends that AHC was her employer for purposes of her PAGA claim, AHC is not a sham defendant, and the matter must be remanded because complete diversity is absent.

Defendants argue that calculating the amount in controversy requires that all potential civil penalties as to each aggrieved employee be aggregated and that the civil penalties with regard to the

1    entire group of aggrieved employees exceeds $75,000. Defendants also maintain that AHC is a sham

2    defendant because it never controlled the conditions of Plaintiff's employment; rather, ALIC is

3    Plaintiff's sole employer.

4    **C.    The Court Has Subject Matter Jurisdiction Over This Action**

5         **1.    Diversity Exists As AHC is Fraudulently Joined**

6              **a.    Legal Standard – Fraudulent Joinder**

7         "Fraudulent joinder is a term of art" and does not require an ill motive. *McCabe*, 811 F.3d

8    at 1339; *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983).

9    Joinder will be deemed fraudulent where the plaintiff fails to state a cause of action against the

10   resident defendant, and the failure is obvious according to the settled rules of the state. *Ritchey v.*

11   *Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe*, 811 F.2d at 1339. In determining

12   whether a cause of action is stated, typically courts "'look only to a plaintiff's pleadings to determine

13   removability.'" *Ritchey*, 139 F.3d at 1318 (quoting *Gould Mut. Life Ins. Co. of N.Y.*, 790 F.2d 769,

14   773 (9th Cir. 1986)). Yet, where fraudulent joinder is an issue, the Ninth Circuit has directed that

15   courts may go "somewhat further" by allowing a defendant to present facts showing that joinder is

16   fraudulent. *Id*. The review of the complaint, however, is constrained to the facts actually alleged

17   therein; it does not extend to facts or causes of action that *could* be alleged via an amended

18   complaint. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 n.12 (9th Cir. 1989) (affirming

19   district court's refusal to consider allegations made in plaintiffs' unfiled, proposed amended

20   complaint submitted as an attachment to a motion for reconsideration to determine whether valid

21   claims had been stated for fraudulent joinder purposes (citing C. Wright, A. Miller & E. Cooper,

22   *Federal Practice and Procedure: Jurisdiction* § 3739 at 580-81 (2d ed. 1985))); *Smith v. City of*

23   *Picayune*, 795 F.2d 482, 485 (5th Cir. 1986) ("Generally, the right of removal is determined by the

24   pleadings as they stand when the petition for removal is filed.").

25        In ruling on a motion for remand where fraudulent joinder is alleged, a court must evaluate

26   the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of fact

27   in favor of the plaintiff. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *see also Albi v. St. &*

28

1  *Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944) ("In borderline situations, where it is doubtful

2  whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily

3  resolved in favor of the retention of the cause in the state court.").  Federal courts in this circuit apply

4  the fraudulent-joinder rule in cases only where it is indisputably clear that the plaintiff states no

5  cause of action against the non-diverse defendant.  *See Dominick's Finer Foods v. Nat'l Constr.*

6  *Servs., Inc.*, No. CV10-00836-SVW (PWJx), 2010 WL 891321, at *2 (C.D. Cal. Mar. 9, 2010)

7  (citing *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067-68 (9th Cir. 2001); *Kruso*, 872 F.2d

8  at 1427; *McCabe*, 811 F.2d at 1339; *Maffei v. Allstate Cal. Ins. Co.*, 412 F. Supp. 2d 1049, 1053

9  (E.D. Cal. 2006)).

10  The standard for assessing whether a defendant is fraudulently joined is similar to the

11  analysis undertaken in considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

12  > [B]ecause the expressed standard for fraudulent joinder is whether there is any
13  > possibility that a claim can be stated against the allegedly 'sham' defendants, the
> standard is necessarily similar to that of motions to dismiss, with two exceptions:
> (1) this Court may pierce the pleadings to make factual determinations, and (2) the
14  > Court may not make final determinations with regard to questions of state law that
> are not well-settled.

15  *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 995 (D. Nev. 2005) (citations omitted).  If

16  the facts alleged by the plaintiff, taken in conjunction with facts proven by the defendant, and

17  considered in the light most favorable to the plaintiff, would have survived a motion for dismissal

18  pursuant to Federal Rule of Civil Procedure 12(b)(6), then removal based on fraudulent joinder is

19  not appropriate.  *See Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir. 1975) ("Inasmuch as

20  appellant's case against the individual defendants was sufficient to withstand a dismissal motion

21  under Fed. R. Civ. P. 12(b)(6), the joinder of claims against them was not fraudulent so as to warrant

22  dismissal on that score . . . "); *see also Ritchey*, 139 F.3d at 1319 ("joinder not fraudulent if case can

23  withstand a 12(b)(6) motion directed to the sufficiency of the cause of action").

24  ///

25  ///

26  ///

8

**b.     Plaintiff Has No Standing to Assert a PAGA Claim Against AHC**

Under PAGA, current or former aggrieved employees are deputized to bring a civil action against any "person" to recover civil penalties for Labor Code violations. Cal. Lab. Code § 2699(a).[5] An "aggrieved employee" means "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." *Id.* § 2699(c). Thus, a plaintiff only has standing to bring a PAGA claim against his or her former or current employer, as opposed to any employer generally. Plaintiff sets forth the PAGA claim on behalf of herself and other aggrieved employees against ALIC, Aetna, and AHC asserting that each separate corporate entity employed her and others similarly situated.

California law generally provides that "[t]he principal test of an employment relationship . . . is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the desired result." *Torres v. Reardon*, 3 Cal. App. 4th 831, 837 (1992). In the wage and hour context, one regulation defines an employer as a person or entity "who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours or working conditions." Cal. Code Regs., tit. 8, § 11040(2)(H). The California Division of Labor Standards Enforcement ("DLSE") states in its Enforcement Manual that "it is important to note that there may be more than one entity responsible for the payment of wages or other benefits. The broad definition of 'employer' for purposes of wage and hour law . . . potentially allows more than one person to be liable for unpaid wages and penalties." DLSE Employment Manual § 37.1.2.

It is not an implausible proposition, given the broad definition of "employer" under California law, that different persons or entities may all be considered one person's employers. In *Hammerl v. Acer Europe, S.A.*, the plaintiff brought suit against Acer Europe, S.A. ("Acer Europe") and Acer America Corporation ("Acer America") claiming violations of the California Labor Code, which was removed to federal court on the precept that Acer America was fraudulently joined because it had never employed the plaintiff, Christian Hammerl ("Hammerl"). No. 5:08-cv-4754 JF (RS), 2009 WL

---

[5] "Person" is defined as "any person, association, organization, partnership, business trust, limited liability company, or corporation." Cal. Lab. Code § 18.

30130, at *1 (N.D. Cal. Jan. 5, 2009). In his complaint, Hammerl asserted that he was offered a position as corporate counsel with Acer America in 1997, and began working for Acer America in San Jose, California. *See id.* at Docket No. 1. In 2004, Plaintiff and Acer Europe entered into a written employment agreement pursuant to which Hammerl continued to work at Acer America's San Jose office, continued to hold an Acer America employee badge, Acer America paid 75% of Hammerl's salary, Acer America reported itself as Hammerl's employer on his Form W-2 filings for income tax purposes and continued to pay Hammerl's health care and retirement benefits. *Id.* at *1-*2. The court concluded that Hammerl's factual allegations presented a plausible theory that both companies jointly employed him. *Id.* at *7. The Court thus found that Acer America was not fraudulently joined and remanded the matter for lack of diversity. *Id.* at *10.

Similarly, in *Blazek v. ADESA California, LLC*, the plaintiff, Jackie Blazek, filed suit in state court alleging her employers, ADESA California, LLC ("ADESA") and PAR, Inc. ("PAR"), wrongfully terminated her employment and asserted claims against them for gender discrimination, discrimination based on a medical condition, termination in violation of public policy, and intentional infliction of emotional distress. No. 3:09-cv-01509-BTM-BLM, 2009 WL 2905972, at * 1 (S.D. Cal. Sept. 8, 2009). PAR removed the action to federal court asserting that ADESA, PAR's parent corporation, was fraudulently joined because Blazek was employed by PAR and not ADESA. In response to PAR's motion to dismiss, Blazek produced evidence that her offer of employment was sent to her on ADESA letterhead and at least one of her paychecks was issued by ADESA. *Id.* at *2. The court determined that, based on these facts, it was possible that ADESA could be considered Blazek's employer, and the case was remanded for a lack of diversity. *Id.* at *2 -*3.

Here, Aetna and ALIC provide sworn declarations of Susan Williams, an employee of ALIC holding the title of "Manager of Human Resources Compliance and Policy." Ms. Williams states that she has "provided human resources services to ALIC, Aetna, Inc. and other entities that are part of the Aetna, Inc. organization, including [AHC] since 2001." (Doc. 24-2, ¶ 1.) As part of her job duties, she has access to the electronic employment records of all California ALIC and AHC employees that are kept in the regular course of business. (Doc. 24-2, ¶ 2.) She has reviewed

1  Plaintiff's electronic employment records which reflect that ALIC hired Plaintiff, paid her wages,
2  assigned her work location, established her work schedule, and ultimately terminated her
3  employment. (Doc. 24-2, ¶ 3.) Ms. Williams further states that Plaintiff was never employed by
4  AHC at any time between April 2001 and the present day. (Doc. 24-2, ¶ 4.)

5  The Court is required to consider Plaintiff's pleadings in light of these sworn allegations and
6  resolve all factual disputes in Plaintiff's favor. An examination of Plaintiff's complaint and the
7  pleadings filed in support of her motion for remand indicate that this action is distinguishable from
8  *Hammerl* and *Blazek;* in those cases, plaintiffs provided factual allegations and theories indicating
9  how multiple entities controlled their conditions of employment.

10  Here, Plaintiff's complaint is entirely bereft of any factual allegations indicating how AHC
11  can be considered her employer. Rather, the complaint asserts legal conclusions that each Defendant
12  "acted as the agent for the other," "aided and abetted the acts and omissions of each and all the other
13  Defendants," and "employed Plaintiff and other persons as non-exempt or hourly employees." (Doc.
14  1-1, ¶¶ 13, 15, 18.)  Legal conclusions are not entitled to the presumption of truth that is afforded
15  to factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to
16  accept as true a legal conclusion couched as a factual allegation").  Although the Court is required
17  to resolve factual disputes in Plaintiff's favor in considering the issue of fraudulent joinder, there are
18  no facts contained in the complaint that could support the conclusion that AHC was Plaintiff's
19  employer; thus, there is nothing the Court can construe in a light most favorable to Plaintiff. *See*
20  *Hibbs-Rhines v. Seagate Tech., LLC*, No. C 08-05430 SI, 2009 WL 513496, at *5 (N.D. Cal. Mar.
21  2, 2009) (legal conclusion in complaint that several corporations jointly employed plaintiff
22  insufficient to survive Fed. R. Civ. P. 12(b)(6) motion).

23  Additionally, unlike the plaintiffs in *Hammerl* and *Blazik*, Plaintiff offers no factual
24  contentions to counter Ms. Williams' statements, nor does Plaintiff posit any viable theory under
25  which AHC could be considered her employer. Rather, she contends that she does not know enough
26  about Aetna's corporate structure to make any allegations regarding for which Aetna-affiliated
27  company she worked. (Doc. 25, 13:16-18 ("Discovery will be needed to determine whether AHC

28

1  had some employment association with Plaintiff or directed [her] conduct in any way.").)

2        AHC's corporate relationship to Aetna and ALIC does not automatically turn AHC into

3  Plaintiff's employer.  Related corporations are presumed to be separate entities; thus, the conduct of

4  one cannot be imputed to the other absent evidence that one acted as the agent or alter-ego of another

5  or there was some other failure to observe corporate formalities. *Mesler v. Bragg Management Co.*,

6  39 Cal. 3d 290, 300 (1985); *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737 (1998),

7  *declined to follow on other grounds in Reid v. Google, Inc.*, 50 Cal. 4th 512 (2010). "In particular,

8  there is a strong presumption that a parent company is not the employer of its subsidiary's

9  employees." *Laird*, 60 Cal. App. 4th at 737 (citing *Frank v. U.S. West, Inc.* 3 F.3d 1357, 1362 (10th

10 Cir. 1993)).  Merely identifying a corporate relationship among AHC, ALIC, and Aetna does not

11 indicate that these companies shared control over the terms of Plaintiff's employment with ALIC.

12       Plaintiff also argues that the statements sworn to by Ms. Williams are "conclusory" and do

13 not "warrant [a] finding that AHC is entirely unrelated to Plaintiff['s] employment." (Doc. 25, 13:14-

14 16.)  Plaintiff concludes that, "[i]n light of the 'very heavy burden' to establish fraudulent joinder,"

15 a finding of fraudulent joinder should be generally reserved for cases where the causes of action

16 against a specific in-state defendant are legally impermissible "or the main facts are uncontested."

17 (Doc. 25, 13:25-14:1.)

18       Absent allegations indicating that AHC controlled or affected the conditions of her

19 employment in some manner, Plaintiff's PAGA claim is not legally viable against AHC.  Further,

20 there are no "main facts" pled that could possibly create a factual dispute.  Ms. Williams' factual

21 statements are not controverted by Plaintiff nor does Plaintiff suggest any other potential influence

22 AHC may have had over her employment.   As such, there are no facts pled to support a viable

23 PAGA claim against AHC, and AHC is therefore a sham defendant.

24               **c.**    **Conclusion and Recommendation**

25       For the reasons stated above, the Court finds that Plaintiff has no standing to assert a claim

26 for civil penalties under PAGA, and thus has no viable claim, against Defendant AHC as there are

27 no facts set forth indicating how AHC controlled or affected the conditions of her employment such

28

that AHC could be found to be her employer.   The Court, therefore, recommends that the PAGA

claim against AHC be dismissed.   As a result, the Court also recommends that AHC be considered

a fraudulent or sham defendant and that its citizenship be disregarded for purposes of determining

the Court's subject matter jurisdiction.   *Ritchey*, 139 F.3d at 1318.   As ALIC and Aetna are not

California residents and they are diverse from Plaintiff, the Court should determine that it has

removal jurisdiction under 28 U.S.C. § 1441.

### 2.    The Amount in Controversy Satisfies the Jurisdictional Requirement

Plaintiff asserts that the amount in controversy in a non-class representative PAGA action

must be calculated by tabulating only penalties attributable to the named plaintiff.  Defendants assert

that the amount must be calculated based on an aggregation of all PAGA penalties sought by the

named plaintiff and the group of aggrieved employees on whose behalf Plaintiff brings suit.   The

parties' dispute regarding the amount in controversy is predicated on a fundamental disagreement

about how PAGA operates and the nature of the PAGA claim itself.  Thus, as a preliminary matter,

the Court sets forth the general framework of a PAGA action.

### a.    PAGA Overview

### i.    PAGA:  Purpose and Procedure

In *Arias,* the California Supreme Court recently explained that a PAGA claim is derived from

statute and deputizes "aggrieved employees" to recover civil penalties against a current or former

employer – placing the employees in the enforcement shoes of the California Labor and Workforce

Development Agency ("LWDA").   *Arias v. Super. Ct.*, 46 Cal. 4th 969, 986 (2009) (an employee

suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies").

Section 2699(a) of the California Labor Code provides as follows:

> Notwithstanding any other provision of law, any provision of this code that provides
> for a civil penalty to be assessed and collected by the Labor and Workforce
> Development Agency or any of its departments, divisions, commissions, boards,
> agencies, or employees, for a violation of this code may, as an alternative, be
> recovered through a civil action brought by an aggrieved employee on behalf of
> himself or herself and other current or former employees pursuant to the procedures
> specified in Section 2699.3.

Cal. Lab. Code § 2699(a).  With one limited exception, penalties recovered by aggrieved employees

are to be distributed 75% to the LWDA and 25% to the aggrieved employees.  *Id.* § 2699(i).

Two catalysts identified for enacting PAGA involved a need for adequate financing of labor law enforcement to achieve maximum compliance with state labor laws and to ensure a disincentive for employers to engage in unlawful employment practices. Cal. Lab. Code § 2698(a). Considering these needs and faced with declining staff levels at state labor law enforcement agencies (*see* Cal. Lab. Code § 2698(c)), the Legislature declared it was in the public interest "to provide that civil penalties for violations of the Labor Code may also be assessed and collected by aggrieved employees acting as private attorneys general, while also ensuring that the state labor law enforcement agencies' enforcement actions have primacy over any private enforcement efforts undertaken . . . . " Cal. Lab. Code § 2698(d).

Thus, before aggrieved employees may seek civil penalties as private attorneys general, they must complete the requirements specified in Labor Code Section 2699.3 and provide the LWDA the first option to enforce and impose penalties. An aggrieved employee must give written notice of the alleged Labor Code violation to both the employer and the LWDA describing the facts and theories supporting the violation. Cal. Lab. Code § 2699.3(a). If the LWDA notifies the employee and the employer that it does not intend to investigate the employee's claim, or if the agency fails to respond within 33 days, the employee is authorized to initiate a civil action against the employer. *Id.* § 2699.3(a)(2)(A). On the other hand, if the LWDA decides to investigate, it has 120 days to do so.

If the LWDA determines that it will not issue a citation, or does not issue a citation within 158 days after the postmark date of the employee's notice, the employee may initiate a civil action. *Id.* § 2699.3(a)(2)(B). Moreover, aggrieved employees are precluded from filing a PAGA action if the LWDA or any of its departments, on the same facts and theories, cites a person within the time frames set forth in Section 2699.3 for the same Labor Code violations pursuant to which the aggrieved employee is attempting to recover a civil penalty on behalf of himself or herself or others. Cal. Lab. Code § 2699(h).

       **ii.**       **Background and Nature of a PAGA Claim**

            **(1)**       **Representative Law Enforcement Action**

The language of the statute provides that PAGA penalties may be recovered "through a civil action brought by an aggrieved employee on behalf of himself or herself *and* other current or former

employees pursuant to the procedures specified in Section 2699.3."  Cal. Lab. Code § 2699(a) (emphasis added).  Only one district court has specifically considered whether plaintiff may assert a PAGA claim in an individual capacity, as opposed to a representative suit on behalf of all aggrieved employees.

In *Machado*, a single plaintiff brought suit against certain defendants for violations of the Fair Labor Standards Act, the California Labor Code, and stated an individual claim for PAGA penalties.  *Machado v. M.A.T. & Sons Landscape, Inc.*, No. 2:09-cv-00459 JAM JFM, 2009 WL 2230788, at *1 (E.D. Cal. July 23, 2009).  Defendants moved to dismiss the claim for PAGA penalties arguing that the language of the statute requires that a PAGA claim be brought as a representative action by the plaintiff *and* on behalf of other employees.  *Id.* at *2.

The court found that Section 2699(a) unambiguously requires that the action be brought as a representative suit.  *Id.* at *2 -*3.  The court noted that the statutory language provides that a civil action may be "brought by an aggrieved employee on behalf of himself or herself *and* other current or former employees."  *Id.* (emphasis added).  The court reasoned that the word "and" clearly and unambiguously requires that a PAGA claim be brought on behalf of other employees.  *Id.* at *2; *see also* 3 Chin, Wiseman, Callahan & Exelrod, California Practice Guide, *Employment Litigation* (2010) Remedies, ¶ 17:777 ("Any suit under PAGA is a representative action.").  As a result, there are no individual claims for PAGA penalties.  *Id. Machado* also determined that while a PAGA civil action must be brought as a representative suit, it does not necessarily need to be brought as a class action.  *Id*. at *3 (citing *Arias v. Sup. Ct.*, 46 Cal. 4th 969 (2009)).  As plaintiff's PAGA claim was not brought on behalf of current or former aggrieved employees, the court dismissed the claim and granted plaintiff leave to amend the complaint to plead the PAGA claim in a representative capacity.

### (2)    Distinct From Typical Class Action

Prior to the Supreme Court's decision in *Arias*, suits under PAGA were virtually all pled as class actions.  *See Benitez v. Wilbur*, No. 08-cv-1122-LJO-GSA, 2009 WL 498085, at * 7 (E.D. Cal. 2009) (collecting cases and finding that virtually all prior PAGA cases had been brought as class actions) (citing *Lu v. Hawaiian Gardens Casino, Inc.*, 170 Cal. App. 4th 466 (2009); *Deleon v. Verizon Wireless*, 170 Cal. 4th 519 (2008); *Lopez v. Lassen Dairy, Inc.*, No. 08-cv-00121-LJO-

GSA, 2008 WL 4657740, at *1 (E.D. Cal. 2008); *Dimon v. Cnty of L.A.*, 166 Cal. App. 4th 1276, 1279 (2008); *Beebe v. Mobility, Inc.*, No. 07-cv-01766-BTM (NLS) 2008 WL 474391, at *6 (S.D. Cal. 2008)); *but see Pulera v. F&B*, No. 2:08-cv-00275-MCE-DAD, 2008 WL 3863489 (E.D. Cal. Aug. 19, 2008) (individual plaintiff seeks PAGA penalties).  Prior to *Arias*, several California federal district courts concluded that PAGA representative claims had to comport with the requirements of Rule 23 or be dismissed.  *See, e.g., Benitez, supra.*

In 2009, the California Supreme Court clarified that a representative action under PAGA did not need to satisfy *state* court class action requirements.  *Arias*, 46 Cal. 4th at 980-88.  The court held that due process did not require class certification since the plaintiff employee brings a PAGA claim "as the proxy or agent of the state's law labor enforcement agencies." *Id.* at 986. Because the PAGA plaintiff is the proxy of the state, nonparty employees and the agency are bound by any judgment as though the agency had brought the action.  *Id.*  Accordingly, the court determined that due process concerns about representative actions not certified as classes were unfounded. *Id.* at 985. The court specifically noted, however, that PAGA may proceed as a class action.  *Id*. at 981 n.5.

In the wake of *Arias*, federal courts have explored the nature of PAGA and how it differs from typical class actions.   One federal district court considered whether the attorney-client relationship was formed between a PAGA plaintiff's counsel and all current and former employees on whose behalf the PAGA suit was brought.   The plaintiff argued that, since an attorney-client relationship arises between the attorney and the entire class upon class certification, the relationship likewise arises between the attorney and the entire group of aggrieved employees in a PAGA representative suit upon satisfying the procedural requirements for a PAGA claim.   *Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. 3:08-cv-2073-MHP, 2010 WL 1340777, at *1 (N.D. Cal. Apr. 2, 2010).  The court rejected the plaintiff's argument and reasoned that unlike a class action that seeks damages or injunctive relief for injured employees, the purpose of PAGA "is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." *Id.*  The court noted that the penalties themselves are not intended to compensate unnamed employees because the action "is fundamentally a law enforcement action." *Id.* at *4.  Further, "unlike the binding finality of class

actions with respect to damages, if the employer defeats a PAGA claim, the nonparty employees, because they were not given notice of the action or afforded an opportunity to be heard, are not bound by the judgment as to remedies *other than civil penalties*." *Id.* (citing *Arias*, 46 Cal. 4th at 987) (emphasis added).  In contrast, class members "would be bound by a judgment against the class, independent of the remedy later sought." *Id.*  As a result, the court found the analogy between PAGA actions and class actions untenable for purposes of applying the attorney-client privilege to PAGA claims in a manner similar to class actions.

In contrasting PAGA suits with typical class actions, federal district courts have grappled with whether a *non-class* representative PAGA action may proceed in federal court, particularly in light of federal procedural and jurisdictional requirements.[6]  *See, e.g., Adams v. Luxottica*, No. 8:07-cv-01465, 2009 WL 7401970 (C.D. Cal. July 24, 2009).   In *Adams*, the court determined that the plaintiff did not have standing to bring a non-class representative PAGA claim on behalf of other aggrieved employees because the action was not brought as a class action in compliance with Federal Rule of Civil Procedure 23.   *Id.*  at *6-7.

Several district courts have disagreed with *Adams*, determining that a non-class PAGA representative action neither requires class certification under Rule 23 nor implicates the prudential standing concerns articulated by the court in *Adams*.  *See McKenzie v. Fed. Express Corp.*, No. CV 10-02420 GAF (PLAx), 2011 WL 1757538 (C.D. Cal. Apr. 14, 2011); *Cardenas v. McLane Foodservice, Inc.*, No. SACV 10-473 DOC (FFMx), 2011 WL 379413, at *3 (C.D. Cal. Jan. 31, 2011); *Mendez v. Tween Brands, Inc.*, No. 2:10-cv-00072-MCE-DAD, 2010 WL 2650571, at *3 (E.D. Cal. May 1, 2010).  These courts built on the distinctions identified in *Arias* and *Ochoa-Hernandez* between a PAGA action and typical class actions in concluding that a PAGA representative suit is fundamentally different from a class action because it is a law enforcement action not meant to compensate aggrieved employees; instead it is designed to further the reach of the LWDA. *McKenzie*, 2011 WL 1757538, at * 9; *Cardenas,* 2011 WL 379413, at *3; *Mendez,* 2010

---

[6] The Ninth Circuit has not yet decided whether a representative action under PAGA must be brought as a "class" action for purposes of Rule 23 or whether a PAGA class action is removable to federal court under the Class Action Fairness Act of 2005 ("CAFA").

WL 2650571, at *3.

With regard to the prudential standing concerns identified by the *Adams* court, the *McKenzie, Carenas,* and *Mendez* courts determined the nature of PAGA renders prudential standing limitations either satisfied or inapplicable.  In *Cardenas*, the court explained that prudential standing limitations generally require that a plaintiff assert his own legal rights and interests "and cannot rest his claim on the legal rights and interests of third parties."  *Cardenas*, 2011 WL 379413, at *5 (quoting *Worth v. Seldon*, 422 U.S. 490, 499 (1975) (internal quotation marks omitted)).  The court relied on *Singleton v. Wulff* in concluding that the general standing principle does not apply "when the ability of the third party to assert his own right is impaired and the relationship between the litigant and the third party [is] such that the former is fully, or very nearly, as effective a proponent of the right as the latter."  *Cardenas*, 2011 WL 379413, at *5 (quoting *Singleton v. Wulff*, 428 U.S. 106, 115-16).  Applying this framework to PAGA, the court found that:

> the California legislature has determined that the LWDA is unable to effectively collect the civil penalties authorized by law, and private litigants are well positioned to serve the public interest by collecting these penalties.  Cal. Labor Code § 2698.  Therefore, Plaintiffs have standing to bring their PAGA claim on behalf of all "aggrieved employees" in the place of the LWDA . . . .  Accordingly, the prudential limitation against third party standing does not apply in this case.

*Id.*

Like *Cardenas*, the court in *Mendez* considered the distinctions between PAGA and typical class actions in determining whether PAGA actions may proceed in federal court without Rule 23 certification.  *Mendez* found the decision in *Adams* "unpersuasive" because a PAGA suit, by its nature, does not assert the rights of third parties;  rather, it represents the interests of the state labor law enforcement agencies.  Thus any standing concerns are inapplicable.  *Mendez*, 2010 WL 2650571, at *4 n.4.  The court in *McKenzie* likewise determined that, because PAGA claims "are law enforcement actions[,] there is no standing issue precluding [a plaintiff] from pursuing this claim" in a representative capacity without satisfying the Rule 23 class certification requirements.  *McKenzie*, 2011 WL 1757538, at *10.

In sum, while the Ninth Circuit has not addressed these issues, the majority view among the district courts following *Arias* creates the following framework: (1) PAGA actions must be filed as representative actions on behalf of other current or former aggrieved employees; (2) while PAGA

1  actions may be brought as class actions, Rule 23 certification is not necessary to the extent PAGA

2  actions are brought in a non-class representative capacity; and (3) prudential standing concerns as

3  to non-class representative PAGA suits are either satisfied (*Cardenas*) or inapplicable (*Mendez* and

4  *McKenzie*).   Amidst this backdrop, the Court considers the parties' disagreement regarding the

5  amount in controversy relative to Plaintiff's non-class representative PAGA suit.

6                    **b.     Contentions of the Parties**

7          The parties' disagreement regarding how to calculate the amount in controversy stems from

8  a fundamental disagreement about the nature of PAGA. Plaintiff asserts that a PAGA claim brought

9  in a non-class representative capacity is a collection of individual claims of all the aggrieved

10  employees, and it functions, at least for purposes of calculating the amount in controversy, like a

11  class action.  (Doc. 17, 5:16-8:4; Doc. 25, 8:15-18 (even if PAGA actions must be brought as

12  representative actions, "that does not provide an exception to the *Zahn* principle against aggregation

13  of claims.").)  Thus, the named plaintiff must satisfy the amount in controversy by determining what

14  PAGA penalties could be recovered by the plaintiff alone.  To calculate the amount in controversy

15  by considering the PAGA penalties potentially recoverable by the entire group of aggrieved

16  employees would be an impermissible aggregation of separate and distinct claims of the group which

17  is a violation of the long-standing anti-aggregation rule.

18          Defendants contend that a non-class representative PAGA action bears little resemblance to

19  a traditional class action and must be treated differently in terms of calculating the amount in

20  controversy.  Specifically, Defendants assert that a PAGA claim does not permit individual relief,

21  and it is not designed to compensate aggrieved employees; rather, it is a private law enforcement

22  action meant to protect the public.  As a result, aggrieved employees do not hold separate and

23  distinct claims under PAGA – they have one claim for PAGA penalties that they must assert

24  together.  Therefore, the amount in controversy is a calculation of the total penalties sought by the

25  group as opposed to only the penalties attributable to the named plaintiff.  (Doc. 24, 8:11-14

26  ("[Plaintiff's] claim for PAGA penalties is all-for-one and one-for-all.  Thus, her allegation that her

27  individual share will ultimately be less than $75,000 is irrelevant because her claim for PAGA

28  penalties as a whole places more than the required jurisdictional amount in controversy.").)

c.       **Anti-Aggregation Rule and Common and Undivided Interest Exception**

It is well- settled that multiple plaintiffs who join in a single lawsuit to enforce rights that are "separate and distinct" may not aggregate their claims to reach the amount in controversy jurisdictional threshold. *See Troy Bank of Troy, Ind., v. G.A. Whitehead & Co.*, 222 U.S. 39, 40 (1911); *Pinel v. Pinel*, 240 U.S. 594, 596 (1916). This anti-aggregation principle has its origins in *Oliver v. Alexander*, 31 U.S. (6 Pet.) 143 (1832).

In *Oliver*, a group of seamen sued in admiralty to recover lost wages. After receiving an award in the circuit court, plaintiffs jointly appealed to the Supreme Court, which at that time could not hear such an appeal unless the amount in controversy exceeded $2,000. While none of the plaintiffs' claims exceeded $900 individually, they asserted that the combined value of their claims far exceeded the $2,000 threshold. The Court rejected this argument stating that "[t]he whole proceeding . . . , from the beginning to the end of the suit, though it assumes the form of a joint suit[,] is in realty a mere joinder of distinct causes of action by distinct parties." *Id.* at 147. As each of the seamen's claims were separate and distinct, the Court held that "no seaman can appeal . . . from the circuit court to the Supreme Court, unless his claim exceeds two thousand dollars." *Id.* The appeal was dismissed for lack of jurisdiction as no individual claim exceeded $2,000. *Id.* at 150.

Since *Oliver*, the anti-aggregation principle has been reaffirmed by the United States Supreme Court and applied in a variety of contexts, including cases brought as class actions. *Snyder v. Harris*, 394 U.S. 332, 335-36 (1969); *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294-95 (1973).[7] The Supreme Court has also long recognized two exceptions to the anti-aggregation rule. *Snyder*, 394 U.S. at 335. In *Snyder*, the Court explained that:

> [a]ggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.

*Id*. Thus, calculation of the amount in controversy in any multiple-plaintiff setting requires an

---

[7] The Supreme Court has further clarified that in multi-plaintiff actions or class actions, only one plaintiff or the named plaintiff needs to satisfy the jurisdictional amount in controversy, and the court will properly assert supplemental jurisdiction over other claims. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005).

examination of the claim or claims asserted by the group.

Consideration of whether a claim is common and undivided among a group of plaintiffs does not turn on the commonality of the law or the facts presented; rather, it is the nature of the underlying claim itself that must be examined. *Potrero Hill Comty. Action Comm. v. Hous. Auth. of S.F.* (*"Potrero"*), 410 F.2d 974, 977-78 (9th Cir. 1969) (comparing *Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939) with *Gibbs v. Buck*, 307 U.S. 66 (1939) and *Buck v. Gallagher*, 307 U.S. 95 (1939)). As noted by the Ninth Circuit in *Eagle*, "the character of the interest asserted depends on the source of plaintiffs' claims. If the claims are derived from rights that they hold in group status, then the claims are common and undivided. If not, the claims are separate and distinct." *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 546 (9th Cir. 1985).

### d. Anti-Aggregation Rule Applies to Non-Class Representative Actions

Defendant relies, at least in part, on the framework provided by various district courts since *Arias* to argue that because a PAGA civil action must be brought as a representative action and because the nature of that representative claim is so distinct from a typical class action, the amount in controversy must be calculated differently from typical class action or multi-plaintiff cases. (Doc. 24:12-17 (citing *Ochoa-Hernandez* for the proposition that PAGA is not meant to compensate unnamed employees because the action is fundamentally a law enforcement action); Doc. 24, 8:1, n.9 (asserting that *Zahn* and other cases are "inapposite because they pertain to the standards for removal of class and other multi-plaintiff actions – not single-plaintiff representative action").) Defendants' counsel asserted at the April 27, 2011, hearing that the exception stated in *Snyder* to the long-standing anti-aggregation principle is inapposite because PAGA is not a collection of individual claims of aggrieved employees, but is, by its nature, one law enforcement claim for penalties.[8]

As Plaintiff correctly contends, the Court has no power to carve out a new hybrid exception to the long-settled anti-aggregation rule for what Defendants characterize as a "single-plaintiff

---

[8] To the extent that Defendants assert PAGA penalties may be aggregated pursuant to the Court's decision in *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00816-AWI-SKO, 2010 WL 2793650 (E.D. Cal. July 14, 2010), Plaintiff correctly asserts that *Schiller* is inapposite because it was removed pursuant to CAFA, and CAFA explicitly allows aggregation of all class members' claims. Therefore, even assuming that PAGA claims are separate and distinct, they could be aggregated under CAFA in any case.

to avoid

representative action." A PAGA action is still a representative action purportedly brought on behalf of other unnamed aggrieved employees, and the prohibition against aggregation in multi-plaintiff cases and class actions applies uniformly to actions brought in a non-class representative capacity. *See Phipps v. Praxair, Inc.*, No. 99-cv-01848-TW, 1999 WL 1095331, at *3 (S.D. Cal. Nov. 12, 1999) (anti-aggregation doctrine still applies when separate and distinct claims are asserted on behalf of a number of individuals, regardless of "whether an action involves a simple joinder of multiple plaintiffs, [or] a representative action"); *Surber v. Reliance Nat'l Indem. Co.*, 110 F. Supp. 2d 1227, 1233 (N.D. Cal. 2000) (explaining that "the prohibition on aggregation applies in non-class multiple-plaintiff cases as well"); *Boston Reed Co. v. Pitney Bowes, Inc.*, No. 02-cv-01106 SC, 2002 WL 1379993, at *5 (N.D. Cal. June 20, 2002) (no exception to anti-aggregation rule simply because action brought as non-class representative suit and private attorneys general action under Cal. Bus. & Prof. Code § 17200 is "a collection of 'separate and distinct' claims").[9]  A PAGA action under Section 2699 either fits into an *existing* exception to the anti-aggregation rule, as articulated in *Snyder,* or it does not.  There is no middle road that can be traveled.

Thus, the question is whether a PAGA claim pursuant to Section 2699 is common and undivided and excepted from the anti-aggregation rule, or whether it is a collection of separate and distinct claims of a group of aggrieved employees and subject to the anti-aggregation rule.

### e.    Section 2699 PAGA Claim is Common and Undivided

As set forth in section III.C.2.c, *supra*, a common and undivided interest has been held to arise when "neither [party] can enforce [the claim] in the absence of the other." *Troy Bank of Troy, Ind.*, 222 U.S. at 41.  Thus, courts have focused on whether the interests and claims of the group can be pursued in an individual capacity by the members of the group – indicating that their claims are

---

[9] Other unrelated types of non-class representative PAGA actions under the California Unfair Business Practices Act have been found to be comprised of separate and distinct claims:

> The Court finds that Plaintiffs' claims are separate and distinct.  Plaintiffs seek damages on behalf of themselves as customers of Defendants' allegedly fraudulent activities, and each Plaintiff may bring a separate action to recoup the fees and charges paid. *See United States v. Southern Pac. Transp. Co.*, 543 F.2d 676, 683 (9th Cir. 1976) (holding that aggregation improper where rights asserted are held by each plaintiff individually).  Plaintiffs do not derive their claims from group status.

*See Phipps*, 1999 WL 1095331, at *3.

separate and distinct – or whether the claim is one that they hold in group status and must be asserted by the group – indicating a common and undivided claim.

In *Eagle* the Ninth Circuit held that claims asserted by minority shareholders brought as a class action were common and undivided. *Eagle*, 769 F.2d at 545. The minority shareholders were seeking redress for actions taken by the majority shareholder that had allegedly depleted the corporate assets. *Id.* The court held that the shareholders' claims arose from a common and undivided interest in remedying an injury to the corporation. *Id.* at 546. The court reasoned that, while the depletion of the corporation's assets had an effect on the value of the shareholders' stock, this was only an indirect injury. *Id.* The shareholders did not own the corporation's assets; injury to those assets was an injury to the corporation and only indirectly an injury to the shareholders. *Id.* Thus, the minority shareholders' claims had to be made as a group on behalf of the corporation.

*Eagle* distinguished *Snyder* where the Supreme Court had considered a minority shareholder class action to recover a premium paid to certain majority shareholders for the sale of their controlling stock, and determined the claims were not aggregable. *Eagle* reasoned that under Missouri law, the minority shareholders in *Snyder* had an individual and direct right to recover a share of the premium received by the majority controlling shareholders, and the right to bring suit by individual shareholders under state law was "in no way dependent upon or derivative of an injury to the corporation." *Eagle*, 769 F.2d at 547. The court observed that a different result was dictated in *Snyder* because no rights accrued nor was injury done to the corporation. *Id.*

In *Potrero* the Ninth Circuit held that claims asserted by tenants of a housing project group were separate and distinct. 410 F.2d at 978. The court explained that the plaintiffs' claims did not arise out of rights held in group status, and plaintiffs did not have any rights peculiar to them as a group. *Id.* Rather, the plaintiffs' rights appeared to have arisen "only from the status of each as individual lessee of a portion of the project premises." *Id.*

In *Gibson v. Chrysler Corp.*, the Ninth Circuit held that class claims for disgorgement were not common and undivided such that aggregation was appropriate to reach the amount-in-controversy jurisdictional threshold. 261 F.3d 927, 944-45 (9th Cir. 2001). The court explained that "[a]ggregation is appropriate only where a defendant 'owes an obligation to the group of plaintiffs

as a group and not to the individuals severally.'" *Id.* at 944 (quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1262 (11th Cir. 2000)).  The court further noted that the holding in *Eagle* that minority shareholders' claims were aggregable was predicated on the fact that "shareholders cannot normally bring suit individually, but must instead institute a derivative suit on behalf of the corporation as a whole." *Id.* (citing *Eagle*, 769 F.2d at 545-46.)  In contrast, the plaintiffs' class disgorgement claims presented in *Gibson* were "each cognizable, calculable, and correctable individually."  In reaching this conclusion, the court reasoned as follows:

> [Plaintiffs' claims] rest on the common legal theory that Chrysler should give up the profits from its use of allegedly defective electrocoat finish techniques – a profit that can be separated into discrete and quantifiable sums attributable to each vehicle sold. Indeed the amended complaint contends with some specificity that Chrysler made an additional profit of between $6.00 and $16.00 per vehicle by using the electrocoat technique.  That sum can be traced to particular transactions involving individual plaintiffs, *each of whom can sue Chrysler for disgorgement of this per-vehicle profit*.

*Gibson*, 261 F.3d at 945.  The court highlighted the fact that recovery by one plaintiff would not, as a legal matter, either preclude or reduce recovery by another.  *Id.*

The *Gibson* court further held that the punitive damage claim of the class was not aggregable because the class members share an interest in punitive damages only because they have joined together for the purposes of litigation.  *Id.* at 946.  Because the plaintiffs could sue individually on all causes of action, nothing precluded them from seeking and recovering punitive damages individually.  Consequently, the "potential for multiple liability directly refutes the argument that there is some unitary res to which the plaintiffs jointly claim a right." *Id.*  The plaintiffs were joined together as a class primarily for convenience and economy and not because the interests of the group were common and undivided.  *Id.* at 946-47.

Here, the aggrieved employees are not united in a representative suit merely for convenience as Section 2699 requires that PAGA actions be brought in a representative form on behalf of all aggrieved employees.  *See Machado*, 2009 WL 2230788, at *2 -*3 (Plain language of section 2699 indicates PAGA must be brought as a representative action). [10]  As such, a PAGA claim is analogous

---

[10] To the extent that the use of the term "or" in Section 2699(h) ("aggrieved employee is attempting to recover a civil penalty on behalf of himself or herself *or* others . . . .") (emphasis added) creates an ambiguity, the purpose of the statute confirms that the Legislature intended that the action be brought as a representative action on behalf of other aggrieved employees. *See, e.g., Dolan v. Postal Service*, 546 U.S. 481, 486 (2006).  First, any civil penalties recovered

to the shareholders' derivative suit in *Eagle*.  In a shareholders' derivative suit, typically, the corporation sustains the primary injury; injury to the shareholders is only indirect.  As a result, the shareholders step into the shoes of the corporation and assert its interests – they have no *individual* right to recovery.  Shareholders' derivative claims are thus "'favored with the fiction that plaintiffs' possible recovery is not the measure of the amount involved for jurisdictional purposes but that the test is the damage asserted to have been sustained by the defendant corporation.'"  *Eagle*, 769 F.2d at 547 (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 523 (1947)).

As discussed in section III.C.2.a., *supra*, PAGA is a law enforcement action meant to further the reach and interests of the LWDA.  Generally analogous to shareholder derivative suits, aggrieved employees are deputized to step into the shoes of the LWDA and pursue its interests in enforcement of the Labor Code.  Private PAGA plaintiffs' interests are only tangential and derivative of the LWDA; PAGA was not designed to compensate employees nor can the penalties recovered be considered "damages" in a compensatory sense.  *Arias*, 46 Cal. 4th at 986.

Further, the LWDA has the first opportunity to impose penalties on an employer or file a civil action to enforce the Labor Code.  *See* Cal. Lab. Code § 2699(h).  Only where the LWDA declines to seek penalties are aggrieved employees empowered – as a group – to bring a private civil action for enforcement.  Therefore, like shareholders whose suit derives from and is dependent upon injury to the corporation, PAGA suits are maintained by aggrieved employees as a group whose right to sue is derived strictly from statute and predicated upon the interests of the LWDA.

---

by the "aggrieved employees" shall be distributed 75% to the LWDA and 25% "to the aggrieved employees." Cal. Lab. Code § 2699(i).  This indicates that 25% of the recovered penalties were intended to be paid to an entire group of aggrieved employees as opposed to only the aggrieved employee who filed suit.  Second, the civil penalties are calculated based on the number of aggrieved employees who suffered a violation in a given pay period, again indicating that the intent of the section was that all aggrieved employees would be included in the action.

Finally, it is impossible to conclude that the statute would achieve its stated purpose if aggrieved employees were permitted to bring PAGA actions in an individual capacity.  If an employee files an individual action and seeks only those penalties for violations that he or she personally suffered, the recovery for the LWDA is considerably diminished and the deterrent effect is curtailed; once a judgment favorable to that aggrieved employee has been reached, it binds all other employees including the LWDA from seeking additional PAGA penalties.  Individual actions would cut off the ability to seek penalties based on violations suffered by other employees.  *See Cardenas*, 2011 WL 379413, at *4.; *Arias*, 46 Cal. 4th at 987. The LWDA would be deprived of the full extent of the penalty – based on calculating penalties attributable to all aggrieved employees – it could potentially have been awarded had it brought its own civil action or had the action been pursued as a representative action on behalf of all aggrieved employees.

1    Additionally, in contrast to the claims at issue in *Snyder, Gibson,* or *Potrero*, a PAGA

2    judgment precludes all other suits for PAGA civil penalties based on the same predicate facts –

3    including any imposition of penalties by the LWDA.   While the lack of potential for multiple

4    individual suits does not, by itself, turn a PAGA claim into one that is common and undivided

5    among the group of aggrieved employees, it indicates that the aggrieved employees' right to recover

6    penalties comes from a single source and the penalties recovered are akin to a unitary res to which

7    aggrieved employees are claiming a right.[11]   As the proxy of the state agency, aggrieved employees

8    are deputized to pursue the claim for the state agency; the nature of the suit does not change simply

9    because it is held in different hands.  If the LWDA were pursuing penalties in a civil action, it would

10   present a single claim for penalties based on the alleged violations suffered by the aggrieved

11   employees – not a multiplicity of claims for violations suffered by each individual employee.   It is

12   incongruent that a single claim for civil penalties in the hands of the LWDA would transform into

13   a collection of separate and distinct claims in the hands of the aggrieved employees who are simply

14   deputized as a group to act in the LWDA's stead, pursuing the same common interest.[12]

15   Plaintiff's assertion that a PAGA claim cannot be common and undivided because the LWDA

16   shares in 75% of the penalties recovered by the aggrieved employees is not persuasive.  (Doc. 25,

17   7:9-17.) Plaintiff presents no argument how LWDA's sharing in the recovery of penalties transforms

18   the underlying nature of the PAGA action.  In *Eagle*, the Ninth Circuit specifically found that the

19   shareholders intended division of the $38 million fund – the amount of the corporation's injury to

20   its assets – pro rata did not make their claims separate and distinct.  The court explained that "[i]t

21   is proper to aggregate the value of jointly held rights when 'several plaintiffs sue to enforce a

22   common and undivided interest which is separate and distinct as between themselves.'" *Id.* (quoting

23

24       [11] *Gibson* noted that under California law one plaintiff's recovery of punitive damages can affect the amount

25   recovered by another plaintiff against the same defendant. *Gibson*, 261 F.3d at 946.  The court held that the "rationale
     for joinder is the possible preclusive effect of the proceeding on the party sought to be joined, thus a party cannot show

26   that claims are common and undivided simply by showing that the success of one plaintiffs' individual claim would affect
     the recovery of another." *Id.* at 947.

27
         [12] Unlike the tenants in *Potrero*, whose rights derived from their own individual leases and not from rights they

28   held as a group, the aggrieved employees' right to a share of civil penalties derive only from one common source and
     one common interest.  *See Potrero*, 410 F.2d at 978.

1 Moore's Federal Practice § 0.97[3] at 962 (1984)). The fact that the LWDA is not a party to the action, but is paid a large portion of the recovery, does not affect the nature of the PAGA action pursued by the aggrieved employees.  While the LWDA may be interested in the outcome of a private civil action for PAGA penalties, it is not a party to the suit.  It maintains no separate claim of its own  – once the LWDA passes on its opportunity to impose civil penalties or file its own civil action, any judgment in a subsequent action brought by aggrieved employees is binding on the LWDA with regard to the underlying violations alleged. *Arias*, 46 Cal. 4th at 986.  Indeed, the fact that the LWDA will be paid the lion's share of any penalties recovered further highlights that the nature of a PAGA claim in the hands of the aggrieved employees is no different than in the hands of the agency – it is the agency that recovers the most because the aggrieved employees are functioning merely as its proxy.

In sum, a PAGA claim is common and undivided because the right to pursue the action derives solely from the LWDA's interest in enforcement of the Labor Code.  Aggrieved employees have no right to seek any individual recovery under PAGA and are precluded from bringing repeated PAGA suits.  As a result, aggrieved employees have no separate and individual rights to pursue under PAGA that would transform it from a law enforcement action that furthers the interests of the LWDA into a myriad of separate and distinct claims of the aggrieved employees.  Like a typical shareholders' derivative suit where the jurisdictional amount in controversy is predicated on the damages sustained by the corporation – as opposed to the named individual shareholder – the amount at stake in a PAGA claim is predicated on the *total amount of the penalties* that can be sought by the aggrieved employees as the proxy of the LWDA.

### f.      Burden of Proof and Calculation of Amount in Controversy

### i.      Burden of Proof

The Ninth Circuit has identified at least three different burdens of proof to establish the amount in controversy.  First, where a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, the amount in controversy requirement is satisfied unless it is proven to a legal certainty that the plaintiff cannot actually recover that amount.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996);

*Guglielmino v. McKee Foods Corp.*, 306 F.3d 696, 699 (9th Cir. 2007).

Second, when it is unclear from the face of the state-court complaint whether the requisite amount in controversy is pled, the amount in controversy must be shown by a preponderance of the evidence. *Sanchez*, 102 F.3d at 404 ("[T]he removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount.").

Finally, in the CAFA context, when a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the "party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir. 2007).[13]

Plaintiff asserts that, because her complaint specifically alleges that PAGA penalties attributable to her are less than $75,000, Defendants must establish that the amount in controversy exceeds $75,000 to a legal certainty pursuant to *Lowdermilk, supra*. Defendants contend that, because the PAGA suit is only one common claim – not a collection of separate and distinct claims – a relevant jurisdictional allegation must relate to the aggregate amount of PAGA penalties sought, not PAGA penalties that are attributable to Plaintiff alone. Defendants also note that Plaintiff's prayer for relief requests "penalties in excess of twenty-five thousand dollars ($25,000) but not to exceed five million dollars ($5,000,000)." (Doc. 1-1, p. 21.) As Plaintiff does not state that all PAGA penalties sought total less than $75,000, there is no relevant and specific allegation in the complaint requiring Defendants to prove the amount in controversy to a legal certainty.

Defendants' argument is persuasive. If the PAGA claim was considered separate and distinct among the aggrieved employees, Plaintiff's allegation that PAGA penalties applicable to her individually are less than $75,000 may require Defendants to establish to a legal certainty the amount

---

[13] Several district courts have extended the legal certainty burden of proof to the Section 1332(a) context. *See, e.g., Lara v. Trimac Transp. Servs. Inc.*, No. 10-cv-4280-GHK-JCx, 2010 WL 3489038 (C.D. Cal. Aug. 6, 2010); *Aurora Loan Servs., LLC v. Cromwell*, No. 10-cv-09226 MMM, 2010 WL 5174782 (C.D. Cal. Dec. 15, 2010); *but see Lyon v. W.W. Grainger, Inc.*, 10-cv-00884 WHA, 2010 WL 1753194 (N.D. Cal. Apr. 29, 2010).

in controversy pursuant to *Lowdermilk*.[14]  However, because the PAGA claim is calculated by considering the PAGA penalties attributable to all of the aggrieved employees, Plaintiff's allegation regarding penalties attributable to her alone is not relevant.  Moreover, the prayer for relief requests between $25,000 and $5,000,000 for all PAGA penalties – which is not an affirmative allegation that the total penalties sought are less than $75,000.  Thus, the Court finds that *Sanchez* governs, and Defendant's burden of proof is by a preponderance of the evidence.

## ii.    Calculation of Amount in Controversy

Plaintiff's claim alleges that Defendants violated the Labor Code by failing to (1) pay overtime; (2) provide meal periods; (3) provide rest periods; (4) pay minimum wages; (5) timely pay wages upon termination; (6) timely pay wages during employment; and (7) to provide complete and accurate wage statements.  (Doc. 1-1, ¶¶ 41-47.)  Pursuant to Section 2699, PAGA penalties are calculated as follows:

> If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and ($200) for each aggrieved employee per pay period for each subsequent violation.

Cal. Lab. Code § 2699(f)(2).  During September 2, 2009, through September 20, 2010 (the applicable PAGA period), ALIC had 1,626 non-exempt employees in California who were employed at least two pay periods.  (Doc. 1-3, ¶ 3.)  Defendants thus calculate potential PAGA penalties for only two pay periods during the applicable PAGA period.  Assuming that PAGA penalties could be collected for only one type of Labor Code violation (e.g., failure to pay overtime), and assuming that every employee suffered that particular violation in at least two pay periods during the relevant PAGA period, a $100 penalty for the initial violation would be assessed for each aggrieved employee in the first pay period (100 x 1,626 = $162,600) and a $200 penalty in the subsequent pay period ($200 x 1,626 = $325,200).  Accordingly, if every employee suffered two violations in two separate

---

[14] Defendants assert that because *Lowdermilk* was predicated on removal under the Class Action Fairness Act and 28 U.S.C. § 1332(d), it does not address whether the legal certainty standard is also applicable in the 28 U.S.C. § 1332(a) removal context.  The Ninth Circuit specifically left this question unanswered in *Guglielmino*, 506 F.3d at 700 n.3.  The Court need not reach the question of whether *Lowdermilk* should apply in the context of a Section 1332(a) removal because there is no specific allegation in the complaint that the total PAGA penalties sought for all aggrieved employees are less than $75,000.

pay periods, the amount of potential PAGA penalties would be $487,800.  Further, Defendants deduct from their calculations the amount of penalties that will be shared with the LWDA, resulting in $121,950 for the aggrieved employees' 25% share of the penalties.

Plaintiff contends that Defendants' calculations assume a 100% violation rate during the two pay periods considered, which Plaintiff asserts is "unsound."  (Doc. 25, 10:10 - 11:13.)  However, because Defendants' calculations only consider two pay periods out of approximately an entire year, and because the calculations only consider one type of violation for which PAGA applies, the assumption that every employee suffered at least two violations of a certain type during the relevant time period does not render the calculations impermissibly speculative.  It is also reasonable to presume that Defendants' policies with regard to wages and hours of its employees was uniform and thus any violation is likely to apply to the entire group of employees.  Further, Plaintiff is essentially requesting PAGA penalties for 100% of the violations – putting all possible provable violations at issue for purposes of the amount in controversy.  Finally, requiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case.  *Muniz v. Pilot Travel Ctrs., LLC*, CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *3 (E.D. Cal. May 1, 2007) (removing defendant not obligated to "research, state, and prove the plaintiff's claim for damages").  Thus, even without considering the potential attorneys' fees, Defendants' calculations establish that it is more likely than not that the PAGA penalties at issue exceed $75,000.

### g.   Conclusion and Recommendation

As Plaintiff's PAGA claim is common and undivided among all aggrieved employees on whose behalf Plaintiff brings suit, the PAGA penalties may be aggregated for purposes of calculating the amount in controversy.  Further, because there is no specific allegation in the complaint that the total PAGA penalties sought are less than $75,000, Defendants must prove by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold – which they have done. It is more likely than not that the total PAGA penalties at issue amount to more than $75,000.  Thus, the Court has subject matter jurisdiction over Plaintiff's PAGA action, and Plaintiff's motion for remand should be denied.

## IV.   RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1.      The claim for PAGA penalties asserted against AHC be DISMISSED; and

2.      Plaintiffs' Motion for Remand be DENIED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Responses to objections shall be filed, and served on all parties, within fourteen (14) days after service of the objections.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 2, 2011**                                   **/s/ Sheila K. Oberto**
                                                        UNITED STATES MAGISTRATE JUDGE